IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| WILLIE WHITE, JR.,<br>*Petitioner,*<br><br>v.<br><br>SGT. TATIYANNA GONZALES,<br>*Respondent.* | CIVIL ACTION<br><br>NO. 22-1226 |
|---|---|

<u>MEMORANDUM</u>

**Baylson, J.**                                                                                                                 September 20, 2023

Defendant presents the Court with a video that shows the incident that Plaintiff alleges constituted excessive force and moves for summary judgement. Based on that video, Defendant argues no reasonable juror could consider Defendant's use of force excessive. The Court agrees and **GRANTS** summary judgement.

I)     LEGAL STANDARD

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). An issue is "genuine" if the evidence is such that a reasonable jury could return a verdict for the non-moving party. <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248 (1986). A factual dispute is "material" if it might affect the outcome of the case under governing law. <u>Id.</u>

A party seeking summary judgment always bears the initial responsibility for informing the district court of the basis for its motion and identifying those portions of the record that it believes demonstrate the absence of a genuine issue of material fact. <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 322 (1986). Where the non-moving party bears the burden of proof on a particular issue at trial, the moving party's initial burden can be met simply by "pointing out to the district court that there is an absence of evidence to support the non-moving party's case." <u>Id.</u> at 325.

After the moving party has met its initial burden, the adverse party's response must, by "citing to particular parts of materials in the record," show that a fact is "genuinely disputed." Fed. R. Civ. P. 56(c)(1). Summary judgment is appropriate if the non-moving party fails to rebut by making a factual showing "sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex, 477 U.S. at 322. Under Rule 56, the Court must view the evidence presented on the motion in the light most favorable to the opposing party. Anderson, 477 U.S. at 255.

II)     **SUMMARY OF FACTS AND BRIEFING**

**A. The undisputed facts and surveillance footage show the physical confrontation.**

The undisputed facts are as follows. At the time of the alleged action, Plaintiff was a pretrial detainee in the Lehigh County Jail. White Dep. 8:5–8:9, Ex. C to Def. Mot. Summ. J., ECF No. 37–1. He used a wheelchair to travel through the jail because of a disability with one of his legs. Id. 12:14–17; 14:5–7. Defendant was a Lieutenant at the Lehigh County Jail. Gonzalez Aff. 1:4, Ex. A to Def. Mot. Summ. J., ECF No. 37–1.

Prior to August 26, 2021, Plaintiff was housed in Administrative Segregation for inmates in unit 3C1. Id. 1:5. Plaintiff was classified as a "disciplinary segregation" inmate. Id. 1:7. According to jail personnel, Plaintiff needed to move cells—to unit 3C2—but refused to do so for "quite some time." Id. 1:7–8.

On August 26, 2021, jail personnel moved Plaintiff's belongings to unit 3C2 while he attended a court hearing. Id. 1:9–10. Five correctional officers, including Defendant, attempted to transport Plaintiff to his new unit upon his return from court. Id. 1:11; Surveillance Footage 10:25, Ex. B to Def. Mot. Summ. J., ECF No. 37–1. Plaintiff was seated in a wheelchair that was

pushed by one correctional officer. Surveillance Footage 10:25. The other four officers, including Defendant, flanked him on both sides. Id.

Surveillance footage captures what occurred next. Id. At the outset of the video, Plaintiff fully extends his legs to allow officers to push the wheelchair freely. Id. Plaintiff is unrestrained, middle-aged, and evinces ability to control arm and leg movement when he places his feet on the ground, which prevents the officer from pushing the wheelchair ("Officer A") further. Id. Defendant motions to turn the wheelchair around, allowing the Officer A to pull the wheelchair toward unit 3C2. Id. As Officer A does so, Plaintiff plants his feet on the ground, which halts the wheelchair again. Id. Plaintiff then rolls his body forward to stand up. Id. Officer A and a second officer ("Officer B") place hands on Plaintiff's shoulders to pull him back into the chair. Id. Despite two officers' restraint, Plaintiff jerks forward quickly to get up again.  Id. Officers A and B yank him back into the chair a second time. Id. As they struggle to subdue him, Defendant approaches Plaintiff and sprays him with oleoresin capsicum ("pepper spray"). Id. Defendant uses the spray one time for approximately one second. Id. Plaintiff continues to struggle with the correctional officers. Id. Several officers, including Defendant, then lift Plaintiff out of the chair and carry him into unit 3C2. Id. The entire confrontation is a matter of seconds. Id.

In his pleadings, Plaintiff alleges he was sprayed twice. Pl. Opp'n. Summ. J., ECF No. 46. However, since the events at issue are captured on video, the Court must consider that evidence in determining whether there is any genuine dispute as to a material fact. See Scott v. Harris, 550 U.S. 372, 380–81 (2007). Where, as here, the events at issue are captured on video and "opposing parties tell two different stories, one of which is blatantly contradicted by the record," the Court must view the facts "in the light depicted by the video[ ]." See id. Additionally, Plaintiff adopts the surveillance footage as accurate. White Dep. 16:12–17.

As a result of the pepper spray, Plaintiff claims he threw up and defecated blood, his throat was sore for a week and a half, and he suffered emotional harm. Id. Plaintiff also claims Defendant visited his cell in the days following the incident and made degrading remarks about his disability. Id. 21:3–17.

### B. Plaintiff's motivation is disputed but immaterial.

Defendant and Plaintiff offer somewhat conflicting accounts of Plaintiff's motivation for resisting. According to Plaintiff, he realized he was not going back to his prior cell when officers wheeled him to a different part of the jail and Defendant entered shaking her head at him. White Dep. 12:12–13:12. Plaintiff was concerned the jail personnel had seized and sifted through his legal work. Id. Plaintiff asserts that he attempted to stand up to "contest" the jail retrieving his legal work. Id. 15:8-20.

Defendant claims Plaintiff began dragging his feet to stop the wheelchair after he realized he was being transported to a new cell, and that she then tried to explain how his disciplinary classification was the reason for the move to unit 3C2. Gonzalez Aff. 2:14. Because the surveillance footage is without sound and evidence must be viewed in the light most favorable to Plaintiff, her explanation of Plaintiff's behavior is a genuine dispute of fact. It is not, however, material for the purposes of Plaintiff's Fourteenth Amendment claim because, as discussed infra 4-7, it does not alter Defendant's undisputed purpose—transporting Plaintiff to his new cell.

### III)   DISCUSSION

The Due Process Clause of the Fourteenth Amendment protects pretrial detainees like Plaintiff. Jacobs v. Cumberland Cnty., 8 F. 4th 187, 194 (3d Cir. 2021). While Plaintiff styles his claim as an Eighth Amendment violation of the Cruel and Unusual Punishment clause, as a pretrial detainee he may seek relief under the Fourteenth Amendment Due Process clause. The

Eighth Amendment is reserved for convicted prisoners. White v. Gonzales, No. 22-CV-1226, 2022 WL 1121031, at *1 (E.D. Pa. Apr. 14, 2022) (Order Allowing Pl. to Proceed In Forma Pauperis). This Court liberally construes filings form a pro se litigant and must "apply the applicable law, irrespective of whether a pro se litigant has mentioned it by name." Holley v. Dep't of Veteran's Affairs, 165 F. 3d 244, 247-48 (3d Cir. 1999).

In excessive force claims, the plaintiff needs to show "that the force purposely or knowingly used against him was unreasonable." Kingsley v. Hendrickson, 576 U.S. 389, 396–97 (2015). The test is objective only; there is no subjective component.[1] He prevails when the "challenged governmental action is not rationally related to a legitimate government purpose or that it is excessive in relation to that purpose." Id. at 398.

The Supreme Court guides this Court with six factors to evaluate whether force was excessive: "[1] the relationship between the need for the use of force and the amount of force used; [2] the extent of the plaintiff's injury; [3] any effort made by the officer to temper or to limit the amount of force; [4] the severity of the security problem at issue; [5] the threat reasonably perceived by the officer; and [6] whether the plaintiff was actively resisting." Id. at 397.

The court analyzes the circumstances "from the perspective of a reasonable officer on the scene." Jacobs, 8 F. 4th at 196 (internal quotation and citations omitted). Additionally, deference must be afforded to the "inordinately difficult undertaking" of running a jail. Turner v. Safley, 482 U.S. 78, 84–85 (1987). Correctional officers have "substantial discretion to devise reasonable solutions to the problems they face," especially when "forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving." Kingsley, 576 U.S.

---

[1] Defendant misstates the legal test in her briefing. Def. Mot. Summ. J. 9 ("Excessive force claims brought under the Fourteenth and Eighth Amendment are analyzed under the same standard.") They are not. Jacobs, 8 F. 4th at 194.

at 399 (internal quotations and citations omitted). In doing so, this Court must place itself in the shoes of a "reasonable officer on the scene, rather than with the 20/20 vision of hindsight." Graham v. Connor, 490 U.S. 386, 396 (1989). Finally, the reasonableness of force must account for the policies and practices that jail officials legitimately "need[ ] to preserve order and discipline and to maintain institutional security." Bell v. Wolfish, 441 U.S. 520, 540 (1979).

Most relevant to the scenario at issue, district courts in this Circuit have routinely found the use of pepper spray a reasonable use of force in response to a physically resistant pretrial detainee. See, e.g., Spada v. Houghton, 20-CV-223, 2022 WL 4280519 at *3 (W.D. Pa. Jul. 22, 2022) ("Precedent can be summed up as holding the use of [pepper spray] to obtain compliance with a legitimate order does not violate any rights, but use of [pepper spray] as a form of corporal punishment does"), report and recommendation adopted, Spada v. Sutter, No. 20-CV-223, 2022 WL 4280342 (W.D. Pa. Sept. 15, 2022), appeal filed; Robison v. Testa, No. 20-CV-263, 2021 WL 5770211 at *4 (W.D. Pa. Dec. 6, 2021); McCamey v. Craig, No. 15-CV-1108, 2016 WL 5816821 at *4 (W.D. Pa. Oct. 5, 2016) ("The Third Circuit has found that use of pepper-spray to subdue an uncooperative inmate, after verbal attempts fail, does not rise to the level of excessive force." (citing Passmore v. Ianello, 528 Fed. Appx. 144, 148 (3d Cir. 2013))). Whether the pepper spray was in response to a physical struggle is a particularly salient circumstance. Compare Robinson v. Danberg, 673 Fed. Appx. 205, 210 (3d Cir. 2016) (reversing lower court's grant of summary judgement for officer because genuine dispute existed over whether detainee was securely locked in his cell and offering no resistance at time of spray), and Arruano v. Maurice, 790 Fed. Appx. 431, 434 (3d Cir. 2019) (reversing lower court's grant of summary judgement for officer because genuine dispute existed over whether "*any* force was necessary" if inmate posed no physical threat to officer) (emphasis in original), with Robison,

2021 WL 5770211 at *4 (granting summary judgment for officer who used pepper spray three times to stop an inmate fight).

IV)     APPLICATION

Taking the disputed and undisputed facts in the light most favorable to Plaintiff, no reasonable juror could find Defendant's force was excessive under the Fourteenth Amendment. The record is undisputed that Defendant was transporting Plaintiff for a legitimate government purpose, changing the housing location of an inmate. Kingsley, 576 U.S. at 398. The only question is whether the force used, the pepper spray, was excessive in relation to that purpose. Id.

The first factor considers the relationship between the need for the use of force and the amount of force used. Id. at 397. It heavily favors Defendant. The video shows Plaintiff impeding transportation by placing his foot on the ground. Surveillance Footage 10:25. That action began the chain of events culminating in Defendant's use of pepper spray. Mounting resistance by Defendant, and counter-actions by jail personnel, followed. Id. At the pivotal moment—when Defendant deploys pepper spray—Plaintiff had 1) dragged his feet to delay transportation, 2) planted his feet to stop movement, 3) attempted to rise out of the wheelchair, and finally 4) more forcefully tried to get out of the wheelchair despite two officers' restraint. Id. Plaintiff took each increasingly aggressive action as jail personnel tried to accomplish their mission *without* using pepper spray. Critically, two officers struggled, and failed, to subdue Plaintiff before Defendant's spray. Id. Thus, Defendant faced the quintessential "split-second decision" of how to gain control over a physically resisting inmate. Kingsley, 576 U.S. at 399. The need for use of force was evident. A single brief use of pepper spray, a non-lethal device,

was an appropriate response to Plaintiff's escalating behavior, which multiple officers could not control with physical restraint alone.[2]

The second factor marginally favors Plaintiff. Plaintiff testified that he vomited and defecated blood in the aftermath of the incident. White Dep. 17:16–22:22. Assuming this to be true, this factor is minimal, however, because the "touchstone of a due process claim is whether the application of force was punitive." Robinson v. Danberg, 673 Fed. Appx. 205, 210 (3d Cir. 2016). Consequently, Plaintiff's injuries, even serious ones, do little to undercut the necessary and non-punitive oriented force applied to subdue him. As an analog, a pretrial inmate physically restrained while attempting escape could not use the extent of his injuries alone to make out a Fourteenth Amendment claim.

The third factor favors Defendant both in the lead-up to and aftermath of the spray. To reiterate, Defendant only used pepper spray after three less severe responses failed. Surveillance Footage 10:25. First, Officer A turned the wheelchair around. Id. Second, two officers tried to place Defendant back in the wheelchair. Id. Third, the officers more forcefully tried to pull Defendant back in the chair after he continued to resist. Id. In response, Defendant used the pepper spray one time for approximately one second. Id. Afterward, in the face of Plaintiff's continued resistance, Defendant tempered and limited her response by carrying him to his cell. Id.

The security problem and threat reasonably perceived by Defendant also weigh in her favor (fourth and fifth factors). Plaintiff had refused to move cells for some time before this incident. Gonzalez Aff. 1:7–8. When he began to resist, he was unrestrained in an open area of the jail. Surveillance Footage 10:25. No physical protection or barriers stood between jail

---

[2] See Spada, 2022 WL 4280519 at *2 (discussing at length how "far down" pepper spray ranks on the list of nonlethal options available to gain control over noncompliant inmates).

personnel and Plaintiff. Moreover, although confined to a wheelchair and suffering some disability, Plaintiff demonstrated evident strength when he resisted two officers pulling him back into the chair. Id. Further, Plaintiff's aggression was escalating fast, posing a clear security threat in the middle of a housing unit. Id. In just a few seconds, the situation transformed from peaceful into an uncontrolled physical struggle. Id. This powder-keg potentiality created a "tense, uncertain, and rapidly evolving" situation, Kingsley, 576 U.S. at 399, which Defendant had to respond to "preserve order and discipline and to maintain institutional security." Bell, 441 U.S. at 540.

Finally, the sixth factor favors Defendant. Plaintiff was actively resisting correctional officers before Defendant sprayed him. Surveillance Footage 10:25.

V)    **CONCLUSION**

Altogether, no reasonable juror could find Defendant's single, brief use of pepper spray excessive under the circumstances. Defendant harbored a legitimate purpose in transporting Plaintiff to his new cell. Subsequently, Plaintiff physically resisted the transportation. After multiple less restrictive efforts failed to subdue his escalating resistance, Defendant used non-lethal pepper spray in a modest manner. As Defendant's actions were reasonable, necessary, and tempered given the circumstances. Defendant's Motion for Summary is **GRANTED**.[3] An appropriate order will follow.

O:\CIVIL 22\22-1226 White v. Gonzales et al\White v. Gonzales SJ Memo and Order.docx

---

[3] Given this dispositive holding, this Court declines to address Defendant's qualified immunity defense.